### BURDEN v. BURDEN et al.

(Circuit Court, N. D. New York. August 6, 1903.)

1. EQUITY PLEADING—BILL—SCANDALOUS AND IMPERTINENT MATTER.

Matters alleged in a bill which are relevant to the issues tendered, in view of the other allegations, and which may be given in evidence thereunder, cannot be stricken out as scandalous and impertinent, where they are not stated in unnecessarily offensive language.

2. SAME—RULE APPLIED.

In a bill by a stockholder against the corporation and its directors to enjoin the enforcement of a contract entered into by them by which, as alleged, the profits and earnings of the corporation were being fraudulently diverted from its stockholders and paid to one of their number as royalties for the use of a void and worthless patent, and to recover from such defendant sums paid him under the contract, which also alleged that he was practically insolvent, and asked that he be enjoined from transferring his stock in the corporation, further allegations that three others of the defendants, who were sons of such defendant, and with him constituted a majority of the directors, were corruptly influenced by him in their action as directors, that they had no business and were dependent on him for support, and were living in an expensive and extravagant manner at his cost, are of matters which are material, and may be proved in support of the other allegations of fraud and insolvency, and cannot be stricken out as scandalous and impertinent.

In Equity. Motion to strike from the bill of complaint on exceptions thereto, as scandalous and impertinent, the following:

"That the said sons of James A. Burden, respondents herein, are dependent entirely upon their father's bounty; that James A. Burden, Jr., is married

and has a family, and keeps up an expensive establishment, being a house in New York City, in the fashionable part of said city, and that the said Williams P. Burden and Arthur S. Burden also live expensively on their father's bounty, not being, as your orator is informed and believes, in any business or having any occupation. And, as your orator is informed and believes, the said Burden is practically insolvent, and has no means of repaying this sum or any sums to the Burden Iron Company; that the dividends coming to him from his holdings in the Burden Iron Company are not more than sufficient for the support of himself and his family, including his son James A. Burden, Jr., and his family, and the other two sons of the said Burden, all of whom live in extravagant and expensive style at James A. Burden's expense, having and maintaining at least two expensive residences in the city of New York and one or more country residences; and that, furthermore, your orator fears that, by the mere transfer or sale of the said Burden's shares of stock in the Burden Iron Company, the only dependence or reliance for the repayment of the said sums by the said Burden to the Burden Iron Company will be gone; and, in any event, the said shares of stock and the dividends derived therefrom are not more than sufficient, as your orator is informed, toward the maintenance of the said Burden and of the aforesaid persons dependent on him as aforesaid."

Robert L. Cutting (John R. Bennett, of counsel), for complainant.

Charles Neave (Austen G. Fox and William J. Roche, of counsel), for defendants.

RAY, District Judge. The bill of complaint charges, in brief, that the Burden Iron Company was organized June 30, 1881, for the purpose of taking over and conducting the business of the copartnership firm of Henry Burden & Sons, of which, at that time, the complainant, I. Townsend Burden, and the defendant James A. Burden, were the sole and equal copartners and owners. All the property of every name and nature belonging to said copartnership was duly transferred to the corporation, which became and still is the owner thereof. The complainant and the individual defendants herein, except Nicholas J. Gable, are stockholders in and directors of the corporation of which James A. Burden is the president, James A. Burden, Jr., is the vice president, John L. Arts is the general manager, and Nicholas J. Gable is the secretary. In and by the agreement pursuant to which said corporation was formed, it was agreed that I. Townsend Burden should take, own, and hold 998 shares, John L. Arts should take, own, and hold 2 shares, and said James A. Burden should take, own, and hold 1,000 shares, making in all 2,000 shares, which was the capital stock of the corporation. All the profits from the business of the corporation are to be divided equally between said James A. Burden and I. Townsend Burden. Said Arts is not to receive any dividend, income, or profit from the corporation, or its business, but in lieu thereof is to have and receive a salary to be fixed by the board of trustees of the corporation. The capital stock was $2,000,000. The number of trustees was fixed at three, and James A. Burden, I. Townsend Burden, and John L. Arts were the original trustees. The two shares of the stock held by the said Arts were placed in his hands as owner to enable the company to be organized, three stockholders being necessary to the formation of such a corporation. At the present time James A. Burden is the owner and holder of 997 shares of the said stock, and the three sons of the said James A. Burden, the defendants

James A. Burden, Jr., Williams P. Burden, and Arthur S. Burden, each own one share, transferred to them on the books of the company without consideration by their father, said transfer having been made solely to qualify said sons as directors of the company, to the end that said James A. Burden might, through them, and by their votes as directors, control the corporation absolutely.

James A. Burden has at all times influenced, controlled, and dominated the board of trustees or directors of said company to such an extent that said board has acted and voted according to the will and under the direction and for the sole interests of the said James A. Burden, without regard to the interests of the corporation or of its stockholders as such, or of the complainant. By reason of this situation, said James A. Burden can either prevent action by the complainant or procure such action, and has procured such action as he desires. As showing this control of the corporation and of the directors, the bill of complaint charges:

"That the said sons of James A. Burden, respondents herein, are dependent entirely upon their father's bounty; that James A. Burden, Jr., is married and has a family, and keeps up an expensive establishment, being a house in New York City in a fashionable part of said city, and that the said Williams P. Burden and Arthur S. Burden also live expensively and on their father's bounty, not being, as your orator is informed and believes, in any business or having any occupation; that the said sons of James A. Burden are entirely under his dominion and control for the aforesaid and other reasons, and that they have voted, acted with, and conspired with their father in derogation of the rights and interests of the corporation and of your orator."

This quotation includes a part of the words excepted to by the defendants. The bill of complaint further charges that the board of trustees now consists of six members, including said James A. Burden and his said three sons. The bill of complaint then charges that more than five-sixths of the business of the Burden Iron Company consists in the manufacture and sale of horseshoes, and that said copartnership, subsequently the corporation, was and is the owner of machinery and improvements, covered by letters patent, for the manufacture of horseshoes, which passed from the copartnership to the corporation as owner, and which were used, operated, and enjoyed by it free from any cost or the payment of any royalty, down to and until the 5th day of January, 1898; that at that time the said James A. Burden set up the claim of ownership to certain of said letters patent, and through the means, mode, and manner of control aforesaid procured the board of trustees of the said corporation to make and authorize to be made, by its officers, a pretended contract between the said corporation and the said James A. Burden for the use by the corporation of certain mechanical devices, being alleged improvements on horseshoe machines, on which letters patent aforesaid had been issued; that the board of trustees went through the form of considering and thereupon fraudulently approved of and directed the secretary of the company to execute a contract with the said James A. Burden for the use of the devices covered by the said letters patent, and whereby it was agreed to pay said James A. Burden eight cents per keg for horseshoes manufactured by the use of said patented devices or any of them. The bill of complaint charges the mode and manner by which this

was done, and then alleges that under the said alleged contract there has been paid to the said James A. Burden more than $152,000 of the money belonging to the corporation, which otherwise would have been available for distribution to the stockholders. The bill of complaint charges that the said payment was improvident, grossly excessive, unreasonable, and out of all proportions, even had it been proper to charge a royalty; that the use of these devices was injurious to the company, and that other devices of the same character, and just as good, or better, were open and free to the use of the public and of this corporation, and further charges, in substance, that the letters patent mentioned were and are void. The bill of complaint then charges that the letters patent referred to were taken out by the said James A. Burden to aid in the scheme of diverting the profits of the corporation to himself, and so secure to himself a larger proportion of the profits than he was entitled to. In short, the bill of complaint charges a fraudulent scheme to divert the profits and net earnings of the corporation from the stockholders entitled thereto to the pockets of said James A. Burden, and then charges a renewal of the said fraudulent scheme and contract by which a continued diversion of the profits and earnings of the corporation of the said James A. Burden is being carried on, and that the renewal and continuation of this alleged contract, and of this mode and manner of defrauding the complainant of his just share of the earnings of the corporation, has been procured and is being perpetuated by and through the control of the board of trustees or directors, exercised by the said James A. Burden. The bill of complaint then charges that irremediable injury will be done to the interests of the complainant if the sum or sums agreed to be paid under this fraudulent contract are paid to the said James A. Burden, and also charges that said James A. Burden ought to repay to the corporation the sum of $150,000 already received by him through the fraudulent schemes aforesaid.

In support of these charges and allegations the bill of complaint then charges:

"And, as your orator is informed and believes, the said Burden is practically insolvent, and has no means to repay this sum or any sums to the Burden Iron Company; that the dividends coming to him from his holdings in the Burden Iron Company are not more than sufficient for the support of himself and his family, including his son James A. Burden, Jr., and his family, and the other two sons of the said Burden, all of whom live in extravagant and expensive style at James A. Burden's expense, having and maintaining at least two expensive residences in the city of New York and one or more country residences; and that, furthermore, your orator fears that by the mere transfer or sale of the said Burden's shares of stock in the Burden Iron Company the only dependence or reliance for the repayment of the said sums by the said Burden to the Burden Iron Company would be gone; and, in any event, the said shares of stock and the dividends derived therefrom are not more than sufficient, as your orator is informed, for the maintenance of the said Burden and of the aforesaid persons dependent upon him as aforesaid."

This is challenged by the exceptions as scandalous and impertinent.

The bill of complaint then says that James A. Burden is not and never was the inventor of any of the devices covered by the said patent, but that same were gotten up by the skilled workmen of the com-

pany, and that the expenses of experimenting and constructing said devices were paid by the company, and that said James A. Burden has caused the books of the company to be changed covering a period of nine years last past, so as to charge his personal account with such expenses. The bill of complaint charges that the suit is not collusive, and prays that the defendants be enjoined and restrained from paying to James A. Burden license fees, royalties, profits, income, or emoluments on account of said letters patent and devices, and that said James A. Burden be enjoined and restrained from receiving such license fees and royalties; that said letters patent be declared void; that James A. Burden has no exclusive right or ownership therein, and that the said company be declared the true and lawful owner thereof, or that the said company be decreed to have a perpetual shopright or license therein; that said James A. Burden make over said letters patent to the company, and that the resolution and contract of January 5, 1898, being a renewal above referred to, be declared fraudulent and void, and that said James A. Burden account for the moneys received by him thereunder, and repay the same to the company; that the defendants be removed from their offices as directors or trustees, and made to account for their management and disposition of the funds and property of the company, and in particular for the sums paid or authorized to be paid to the said James A. Burden.

If the allegations of the complaint, set forth with particularity, are true, the complainant has a good cause of action, and is entitled to some if not all the relief prayed for in the complaint.

It would seem clear that it will be competent to prove on a trial in support of these allegations that the sons of the defendant James A. Burden are and were directors or trustees of this corporation at the time mentioned in the bill of complaint; also that they as such directors were improperly and corruptly influenced and controlled by James A. Burden; and, if this be true, then the mode and manner and means by which they were so influenced to authorize, make, approve, and execute such fraudulent contract or agreement may be proved. If these things may be proved, they may and must be alleged. Hence, it will be perfectly proper and competent to prove that these sons, at the time of their action as directors, expected to be, and, since the making of the contract, have been, in the mode described, the recipients of at least a part of the proceeds of such illegal and fraudulent contract. It may also be alleged and proved that these sons of James A. Burden, in making and authorizing the contract, knew they were dependent on their father, and would receive a considerable part or some part of the net earnings of the company, to be illegally and fraudulently diverted from the complainant to the said James A. Burden. If these sons understood that they were to be compensated in this way for their fraudulent transactions as directors, and were induced to act fraudulently and corruptly by means of the fact that they were dependent on their father, and were willing so to act, and did so act in order to maintain an extravagant and expensive style of living, it is perfectly proper to allege such facts in the bill of complaint, and proof thereof will be competent on the trial. It is immaterial that their compensation for fraudulent conduct as directors was to come or that it does

come in this indirect manner. In substance and effect, the charge of the complaint is that these sons were and are living in an expensive and extravagant manner; that they have no means of their own; that they are dependent on James A. Burden, their father; that they knew these facts, and also knew their father had no means of his own to maintain them and the family of one of them in this style of living; that they were induced to make and did make and authorize this fraudulent contract and agreement for the purpose of diverting the net earnings and profits of the company from the stockholders, especially the complainant, to James A. Burden, and through him to themselves. It will also be competent to prove, and therefore it is proper to allege in the bill of complaint, that James A. Burden is in fact insolvent, and dissipates his own property as well as the moneys received under this fraudulent agreement in extravagant living, and in the support of his sons in the manner described, and as an indirect compensation for their fraudulent and corrupt action as directors of the company. This is especially true as bearing upon the question of injunctive relief.

It is. claimed that the allegations of the bill of complaint excepted to are scandalous and impertinent. The court will be compelled to hear evidence bearing on all these subjects, and if the allegations are true, or witnesses will swear to their truth on the trial, it would be error for the court to refuse to admit the evidence. No crime is charged, and there is no reflection upon the moral character of the persons mentioned in the particular statements excepted to, except as necessary to charge the fraud complained of. Allegations in a bill of complaint may be impertinent without being scandalous. But here we have no digression from the material allegations of the complaint, and, if true, the statements excepted to are not only necessary allegations, but material to the matter in question.

For these reasons the exceptions cannot, under the authorities, be sustained. In 1 Daniell's Chancery Pl. & Pr. (6th Am. Ed.) *347, *348, *349, it is said:

"Scandal consists in the allegation of anything which is unbecoming the dignity of the court to hear, or is contrary to good manners, or which charges some person with a crime not necessary to be shown in the cause; to which may be added that any unnecessary allegation, bearing cruelly upon the moral character of an individual, is also scandalous."

"There are many cases, however, in which the words in the record, though apparently very scandalous, are yet, if material to the matter in dispute, and tending to a discovery of the point in question, not considered as scandalous; for a man may be stated on the record to be guilty of a very notorious fraud, or a very scandalous action, as in the case of a brokerage bond, given before marriage, to draw in a poor woman to marry; or where a man falsely represents himself to have a great estate, when in fact he is a bankrupt; or where one man is personated for another; or in the case of a common cheat, gamester, or sharper about the town. In these, and many other instances, the allegations may appear to be very scandalous, and not fit to remain on the records of the court; and yet, perhaps, without having an answer to them, the party may lose his right. The court, therefore, always judges whether, though matter be prima facie scandalous, it is or is not of absolute necessity to state it; and if it materially tends to the point in question, and is become a necessary part of the cause, and material to the defense of either party, the court never looks upon this to be scandalous. Were it otherwise, it would be laying down a rule that all charges of fraud are scandalous, which would be dangerous. If, therefore, a bill is filed by a cestui que trust for the purpose

of removing a trustee, it is not scandalous or impertinent to challenge every act of the trustee as misconduct, or to impute to him corrupt or improper motives, in the execution of the trust, or to allege that his conduct is the vindictive consequence of some act on the part of the cestui que trust, or of some change in his situation. In such case, however, it would be impertinent, and might be scandalous, to state any circumstance as evidence of general malice or personal hostility, without connecting such circumstance with the acts of the trustee which are complained of; because the fact of the trustee entertaining general malice or hostility against the plaintiff affords no necessary or legal inference that his conduct in any particular instance results from such motive."

"From what has been said before, it may be collected that, although nothing relevant can be scandalous, matter in a bill may be impertinent without being scandalous. Impertinences are described by Lord Chief Baron Gilbert to be 'where the records of the court are stuffed with long recitals, or with long digressions of matter of fact, which are altogether unnecessary and totally immaterial to the matter in question, as where a deed is unnecessarily set forth in hæc verba.' "

In Wood v. Mann, 1 Sumn. 506, Fed. Cas. No. 17,951, and 1 Sumn. 578, Fed. Cas. No. 17,951, it is held the best test to ascertain whether a matter be impertinent is to determine whether the subject of the allegation could be put in issue and would be matter proper to be given in evidence between the parties.

The allegations excepted to are not couched in unnecessarily offensive language. Whether these allegations be true or not is not now before the court. The question is, can the facts alleged and excepted to be given in evidence on the trial? This court is of the opinion that these facts may be proved in connection with the other facts alleged in the bill of complaint.

The effect of the evidence will depend quite largely upon the other evidence in the case. It may turn out from failure to prove other matters that these facts cannot be proved, but in the connection stated they are certainly neither scandalous nor impertinent. Nothing can be scandalous which is relevant. Fisher v. Owen, 8 Ch. Div. 645, 653; Gleaves v. Morrow, 2 Tenn. Ch. 592; Goodrich v. Parker, 1 Minn. 195. That which may have an effect on the question of costs is not scandalous or impertinent. Desplaces v. Goris, 1 Ed. Ch. 350.

An executor, called to an account, may say in his answer that some of the property is withheld from him under a forged deed possessed by the plaintiff, for his silence might prejudice him afterwards. Jolly v. Carter, 2 Ed. Ch. 209. See, also, Sommers v. Torrey, 5 Paige, 54, 28 Am. Dec. 411; Rees v. Evans, 1 Smith's Ch. Pr. (2d Am. Ed.) 567, note b. If the matter materially tends to sustain or establish the matter or point in issue, it is not scandalous. Everett v. Prythergeh, 12 Sim. 365, 367; B. v. W., 31 Beav. 342; A. v. B., 8 Jur. N. S. 1141; Crocknall v. Jauson, 11 Ch. D. 1. In case of doubt, the presumption is in favor of the pertinency of the matters alleged. Leslie v. Leslie (N. J. Ch.) 24 Atl. 1029. The test of impertinent matter is whether it can be put in issue and is admissible in evidence. Woods v. Morrell, 1 Johns. Ch. 103; Miller v. Buchanan (C. C.) 5 Fed. 366; Wilkinson v. Dodd, 42 N. J. Eq. 234, 7 Atl. 327.

In the last case cited, at page 244, 42 N. J. Eq., page 332, 7 Atl., the court said, adopting the language of Chancellor Kent in Woods v. Morrell, supra:

"The best test by which to ascertain whether the matter be impertinent is to try whether the subject of the allegation could be put in issue and would be matter proper to be given in evidence between the parties." "These principles must be my guide: Are the allegations excepted to material? Do they tend to establish the complainant's case? Are they pertinent to the main issue?"

It may be proved that James A. Burden is practically insolvent, and has no means of repaying the moneys fraudulently diverted or now being diverted. It will be proper to prove that the dividends coming to James A. Burden from his holdings in the company are not more than sufficient for the payment of his living expenses and the living expenses of those he actually supports, and who are dependent upon him for their support. It will be competent on the trial to prove that the defendants, James A. Burden and his sons, live in extravagant and expensive style at James A. Burden's expense, provided there is any evidence tending to show that these facts had any bearing on the actions of the sons as directors, and also as bearing on the financial responsibility of James A. Burden. The number of expensive residences maintained are allegations of fact tending to show that these sons do live in an expensive style. It is also proper to show, as bearing on the question whether or not an injunction should be granted, that there is reason to believe that said James A. Burden would be without any income whatever should he transfer his stock in this company, and that, therefore, the complainant would be without remedy should he be successful in the action. For the same reason, it will be competent to show that the dividends due James A. Burden are only sufficient for the maintenance of James A. Burden and the sons dependent on him. The language, "fears that by the mere transfer," etc., is not challenged as an insufficient allegation, and it may be said at this time that it is equivalent to an allegation that the complainant believes and has reason to believe, etc.

Recurring to the other language complained of, it is proper to say that we find substantially a repetition, but the repetition comes from the fact that first in the complaint the statement as to the mode and manner of living is in connection with the charge that these sons were corruptly influenced by the father, in their action as directors of the company, while later on the same charge, in substance, is made as bearing on the necessity for injunctive relief.

The attention of this court has been directed to a record in the Supreme Court of the state of New York, in an action there pending and heretofore tried and determined, wherein this complainant was plaintiff, and James A. Burden and the Burden Iron Company and John L. Arts and others were defendants. That action and the judgment therein, whatever may have been determined, is not res adjudicata here, as the actions are not between the same parties; and, again, an inspection of that record shows that the matters here in dispute and litigation were not in litigation there, except in part, and then not in such a manner as to involve a determination of the matters in controversy here. If that action is res adjudicata in this case, it must be pleaded as such, and cannot be considered in determining the validity of these exceptions.

124 F.—17

Attention is called to the fact that in that action certain allegations of the complaint were stricken out. That action of the Supreme Court may have been proper in that case, but a comparison of the allegations excepted to here with those stricken out in the state court show that they are not the same in substance or in effect. Again, the rules of pleading are different under the Code of Civil Procedure of the state of New York from those prevailing in actions in equity in the Circuit Court of the United States.

It may be well in this connection to call attention to some of the cases decided in the courts of the state of New York under the Code of Civil Procedure:

"The true rule in respect to striking out irrelevant allegations in a pleading is that if the matter cannot be made the subject of a material issue, or affect the question of an injunction, or costs, or other relief to be granted, and will embarrass the opposite party and the court, it should be stricken out." Martin v. Kanouse, 2 Abb. Prac. 330.

"A motion to strike out matter as irrelevant should be granted only where no doubt of the irrelevancy exists, and there must be some evidence that the retention of the allegations would embarrass the defendant in his defense." Lynch v. Second Ave. R. Co., 7 App. Div. 164, 39 N. Y. Supp. 1103.

"The test by which to determine whether the statements in a pleading are material or relevant is to inquire whether they tend to make or constitute a cause of action or defense. If they do so tend, they cannot be considered irrelevant." Dovan v. Dinsmore, 33 Barb. 86; Clark v. Jeffersonville, etc., R. Co., 44 Ind. 248.

In Davenport Glucose Man. Co. v. Taussig, 31 Hun, 566, it was sought to strike out certain allegations in figures as to the debts and liabilities of defendants, and also statements of fraudulent representations made by them. The action was one for the claim and delivery of property, and the defendants were accused of having concealed their insolvency while purchasing the goods in question, and it was said by the court that the figures of the debts and liabilities of the defendants were—

"Essential facts bearing upon the allegation of insolvency, its fraudulent suppression, and the design in making the purchase under the circumstances disclosed. The courts have held that proof of similar representations to those alleged by the plaintiffs may be given in evidence for the purpose of establishing the general fraudulent design. And these representations are facts upon which the plaintiffs rely to establish the existence of the fraudulent intent and without which their case might be insufficient. They are not irrelevant, they are not redundant, and they are not frivolous. They are, as suggested, essential facts, in conjunction with others, leading to the truth of the conclusions stated, namely, that the purchase was made from the plaintiffs fraudulently, and with a preconceived design not to pay for the goods obtained. The defendants cannot be injured by the statement of them; on the contrary, it is quite clear that, being thus advised of the different elements composing the plaintiff's charge, they would be better prepared to meet it."

It may be that by careful redrafting the allegations excepted to might be condensed, and some words omitted, but it is well settled that a mere redundancy in stating a material allegation does not subject it to the charge that it is scandalous or impertinent.

This court has given the language complained of careful consideration in connection with the other allegations of the complaint, as allegations of this character should not be retained in a record of this

court unless essential to a proper statement of the alleged cause of action.

The exceptions cannot be sustained, and an order will be entered overruling the same.