## Piro v. Bell

*Jay H. Feldman*, for plaintiffs.
*Michael D. Heintzman*, for defendant Michael C. Bell.

WETTICK, *J.,* July 24, 1981—Presently before this court is the motion of defendant, Michael C. Bell, M.D., for a protective order requesting this court to deny plaintiffs' request to produce a report which he submitted to his insurance carrier describing the treatment that is the subject of this medical malpractice action. Dr. Bell supports his motion on the grounds that his report is protected by the attorney-client privilege.

This report consists of Dr. Bell's written replies to more than 100 questions contained in a claim form of his insurance carrier together with a one and one-half page narrative report describing his treatment of plaintiff. The insurance carrier sent its claim form directly to Dr. Bell once it learned that a claim was likely to be made against him with

respect to the treatment which plaintiff received. After Dr. Bell completed the form, he mailed it directly to his insurance carrier. The apparent purpose of the report was to provide the insurance carrier with information that will permit it to evaluate its liability.

The report was completed and returned to the insurance carrier in December 1978. At that time, Dr. Bell was not represented by counsel and had not yet been sued. This action was not instituted until May 17, 1979 and counsel for Dr. Bell, provided by his insurance carrier, entered his appearance on May 23, 1979. Immediately after he entered his appearance, he received a copy of Dr. Bell's report from the insurance carrier.

The relevant rules of discovery governing this motion are Rule 4003.1 which permits a party to obtain discovery regarding any matter which is relevant to the subject matter involved in the pending action, Rule 4003.3 which permits discovery of relevant matters prepared in anticipation of litigation, Rule 4003.4 which entitles a party upon written request to obtain immediate receipt of a copy of a statement concerning the action previously made by any other party, and Rule 4011 which bars discovery relating to any matter which is privileged. These rules permit plaintiff to obtain Dr. Bell's statement unless it is protected by the attorney-client privilege.

The attorney-client privilege is a fundamental concept in our body of common law that is presently codified in the Act of July 9, 1976, P.L. 586, 42 Pa.C.S.A. §5928 which provides:

"In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client

be compelled to disclose the same, unless in either case the privilege is waived upon the trial by the client."

Not all information in the possession of an attorney is protected by the attorney-client privilege. The purpose of the privilege is to foster an open attorney-client dialogue essential for the proper representation of a client. Accordingly, the privilege protects only disclosures necessary to obtain informed legal advice which might not have been made absent the privilege. Brennan v. Brennan, 281 Pa. Super. 362, 422 A. 2d 510, 513-15 (1980); Cohen v. Jenkintown Cab. Co., 238 Pa. Super. 456, 357 A. 2d 689 (1976). The criteria that must be met for the attorney-client privilege to apply are set forth in the oft-cited case of United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-9 (D. Mass., 1950) (Wyanski, J.):

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the lawyer was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waved by the client."

These criteria appear to be required by the Pennsylvania courts. See Hopewell v. Adebimpe, 18 D. & C. 3d 659 (1981).

The communication in question does not meet

several of the requisite criteria. The communication was not made to a member of the bar or his or her subordinate. At the time the communication was made, the asserted holder of the privilege was not a client or seeking to become a client of any attorney. And the communication was not made outside the presence of strangers.

Defendant argues that the communication comes within the attorney-client privilege because when we view the transaction in its entirety, we have a confidential communication necessary to secure legal services. In support of this position, he contends that where there is insurance coverage, the insurance company should be seen as a representative of the insured's counsel because the information which it obtains will be supplied to counsel for purposes of preparing a legal defense on behalf of the insured. In fact, he contends that because the insurance company is an indemnitor which also has a stake in the litigation, the insurance company should be viewed as the same entity as the insured.

According to defendant, the insurance situation is unique because of the interlocking relationship between the attorney, the insured and the insurance company; consequently, the protections of the attorney-client privilege are essential to permit the free flow of information between these three entities in order to foster the open attorney-client dialogue essential for the proper representation of a client. Furthermore, because the attorney's first responsibility is to the insured under insurance law and the Code of Professional Responsibility, defendant argues that to treat the insurance company as a separate entity would be to place form over substance.

Defendant's argument may have considerable

merit if we were considering the effect on the attorney-client privilege of an attorney's disclosure to the insurance company of an insured's confidential communication made to counsel where the purpose of the disclosure was to permit the insurance company to evaluate the claim. But in this case the communication was initially made to the insurance company—not counsel representing the insured. Consequently, the insured received none of the protections provided by the Code of Professional Responsibility or the attorney-client privilege. The insurance company was free to use the information which its insured provided for any purpose whatsoever, including to defeat the insured's claim that he is entitled to coverage. Moreover, a sophisticated insured would be aware of the potential adverse relationship with his or her insurance company and consequently would not necessarily provide the same information that would be provided to an attorney whose sole responsibility is to the client. Thus the major foundations upon which defendant's argument rests— that the insurance company is acting solely as a representative for the insured, that the information is gathered solely for purposes of preparing a defense, and that the insured will understand that his or her disclosures will be used solely to protect his or her interests—are factually incorrect. Therefore, we hold that the attorney-client privilege does not apply to this communication.[1]

Before reaching this conclusion, we have reviewed the numerous appellate court cases from other jurisdictions which have considered this

---

1. Cases supporting this position include Rudisill v. Nationwide Insurance Co., 77 York Legal Record 74 (1963); Com. v. Rumfield, 32 Lehigh 110 (1966); Whitted v. Butler and Whitted, 67 Delaware 5 (1979).

issue. While the weight of authority would appear to favor the argument that the insured's communication to an insurance agent prior to the retention of counsel is privileged, there is substantial authority to the contrary. Compare State of Missouri ex rel. Cain v. Barker, 540 S.W. 2d 50 (Missouri Supreme Court, 1976); People v. Ryan, 30 Ill. 2d 456, 197 N.E. 2d 15 (1964); Hollien v. Kaye, 194 Misc. 821, 87 N.Y. Supp. 2d 782 (Sup. Ct. 1949); Brakhage v. Graff, 190 Neb. 53, 206 N.W. 2d 45 (1973) and cases cited therein which included the communication within the attorney-client privilege with Jacobi v. Podevels, 23 Wis. 2d 152, 127 N.W. 2d 73 (1964); Butler v. Doyle, 112 Arizona 522, 544 P. 2d 204 (1975); Jackson v. Kroblin, 49 F.R.D. 134 (N.D.W.Va. 1970); Gottlieb v. Bresler, 24 F.R.D. 371 (D.C. 1959); Ft. Howard Paper Co. v. Affiliated F. M. Insurance Co., 64 F.R.D. 694 (W.D. Wisc. 1974) which held that statements made to the insurer prior to the retention of counsel are not protected. See, generally, Annotation-Privilege of Communications or Reports Between Liability or Indemnity Insurer and Insured, 22 A.L.R. 2d 659 (1952).

The rationale for extending the privilege to a communication made by an insured to his or her liability insurance company is articulated in the two frequently cited cases of People v. Ryan, supra,

"We think the rationale of those cases upholding the privileged nature of communications between insured and insurer where the insurer is under an obligation to defend is more persuasive. We concede that such communications are normally made by the insured to a layman and in many cases no lawyer will actually be retained for the purpose of defending the insured. Nevertheless, by the terms

674

of the common liability insurance contract, the insured effectively delegates to the insurer the selection of an attorney and the conduct of the defense of any civil litigation. The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances, we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominate purpose of transmitting it to an attorney for the protection of the interests of the insured. We believe that same salutary reasons for the privilege as exist when the communication is directly between the client and attorney were present when Della Emberton made her statement to the investigator for her insurer. We therefore conclude that public policy dictates that the statement given by Della Emberton to her insurance carrier was clothed with the attorney-client privilege while in control of the insurer." 197 N.E. 2d at 17

and Hollien v. Kaye, supra,

"The assured should be encouraged to, rather than discouraged from, making a full and complete disclosure to his insurance carrier . . . Should the assured be prevented from unbosoming himself of the true facts concerning an accident to the very entity, which, either through voluntary choice or under legal compulsion, he has paid to protect his interests in the event of an accident, through fear that his statement could be reached by the person who will instigate against him either civil or criminal proceedings or both? Or should fear of self-incrimination or fear of a recovery beyond policy limits subjugate the assured to the point of concealing the true facts to the very one whom he has paid in advance to protect him in just such a contingency?

"It seems to this court that it would be contrary to sound public policy to permit the discovery and inspection of statements of a defendant or a prospective defendant made to his own insurance carrier, whether made before or after suit is instituted or to its lay representatives, either before or after an attorney has been retained to represent its assured." 87 N.Y. Supp. 2d at 785.

The rationale for holding that a communication made by an insured to his or her liability insurance company is not protected by the attorney-client privilege is that this is not a confidential communication between an attorney and a client. See, e.g., Butler v. Doyle, supra:

"The statements given by respondents are not covered under the protection of the attorney-client privilege. The statement to the insurance carrier is vastly different from the situation of a client confiding information to his attorney. As was noted in Jacobi v. Podevels, 23 Wisc. 2d 152, 127 N.W. 2d 73 (1964):

'When the insured makes such a statement he is ordinarily fulfilling a condition of his policy, requiring him to notify the insurer of the occurrence and circumstances of the accident and to cooperate with the insurer. If the statement be false, the insurer may use it against the insured as foundation for a claim of noncooperation. If the statement discloses facts giving rise to some other defense against the insurer's liability under the policy, the insurer is doubtless free to make use of those facts. Because of these factors it is not wholly correct to say that a communiation from insured to insurer is the same as a communication of client to attorney.'

"The insurance carrier is more than a mere agent transmitting the .policyholder's statement to the attorney hired to defend the insured.

"The insurance carrier has the right to review and consider the statement submitted by the insured for any legitimate purpose connected with the business of the company. Coverage, cooperation, and renewal are a few of the matters, in addition to consideration of the potential claim, for which the insurer may use the statement of the insured. The use of the statement for a purpose adverse to the interest of the insured is certainly inconsistent with the claim of privilege upon his behalf." 544 P. 2d at 207.

We agree with the Butler v. Doyle rationale. The sole purpose for the attorney-client privilege is to encourage the full disclosure to counsel necessary to secure proper representation. Because any information encompassed within the attorney-client privilege is protected absolutely no matter how necessary the information may be to a fair resolution of the proceedings, the privilege is to be narrowly construed. Dean Wigmore has written

"Nevertheless, the privilege [attorney-client] remains an exception to the general duty to disclose . . . It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 Wigmore, Evidence (McNaughton Rev. 1961), p. 545, Sec. 2291.

Obviously, there is no attorney-client relationship between an insured and his or her insurance carrier and any communication to an agent for the carrier who is not acting on behalf of a specific lawyer representing the insured does not, as we have previously stated, meet the criteria for the attorney-client privilege to apply. Thus, if we would

treat such a communication as though the insured is talking to his or her lawyer because there may be subsequent litigation that will be defended by counsel selected by the insurer, we would be doing nothing more than creating a new privilege (insured-insurer).

There may be sound policy reasons for protecting communications between an insured and the insurer to encourage the free flow of information necessary to permit cases to be properly evaluated, thereby enhancing the likelihood of settlement prior to litigation. These policy considerations should be addressed to the legislature. There is no power in the courts to create a new privilege in the absence of constitutional or legislative provisions compelling such a result.[2] This very issue was considered by Honorable Robert A. Doyle of this Court in Tannenbaum v. May Department Store, supra, where he stated

"Courts have no inherent power to specially, or generally, invest witnesses with any privilege to refuse to testify, nor to create privileges in the field of law relating to evidence and witnesses. Power to proscribe rules of evidence and, per extenso, rules creating privileges not to testify, was specifically denied to the Pennsylvania courts by the Constitutional Convention of 1967-68 during the debate on the Judiciary Article Resolution No. 1000, Con. Con. 1968." (p. 702)

In summary, we reject the insurance company's

2. Rule 4011(c) protects only matters which are privileged and the term "privilege," as used in the discovery rules, refers only to a privilege based on constitutional or statutory provisions or existing common law. Goodrich-Amram 2d 4011(c): 1; Spearath v. Thomas, 48 D. & C. 2d 309 (Bucks, 1969); Tannenbaum v. May Department Store, 65 D. & C. 2d 700 (1974); Firschein v. LaFayette College, 7 D. & C. 3d 243 (1978).

argument that it may use the information which the insured provided to the disadvantage of the insured while invoking the attorney-client privilege to prevent any third parties from doing so. In most cases, the insured is primarily interested in protecting his or her claim for coverage and therefore to protect from disclosure a communication that may be used to defeat the insured's coverage claim is entirely inconsistent with the underlying policies for protecting an attorney-client communication. An insurance company may obtain for its insured the protections of the attorney-client privilege by having its insured communicate directly with counsel representing the insured. But the price for doing so is that the information cannot be used against the insured in its dealings with the insurance company. Without paying this price, the insurance company shall not receive the protections of the attorney-client privilege.

For these reasons, we will require Dr. Bell to produce the report which plaintiff seeks to discover.

## ORDER OF COURT

On this July 24, 1981, it is hereby ordered that defendant Michael C. Bell's motion for a protective order is denied.