Cohen et vir, Appellants, *v.* Jenkintown Cab
Company et al., Appellants.

Argued September 11, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Edward R. Paul*, with him *LaBrum and Doak*, for appellants at No. 1257 and appellees at No. 1266.

*Fred Lowenschuss*, with him *William D. Parry*, for appellants at No. 1266 and appellees at No. 1257.

OPINION BY CERCONE, J., February 5, 1976:

This appeal by Jenkintown Cab Co. arises from the lower court's granting of plaintiff's motion for a new trial, after the jury returned a verdict for the defendant cab company at the trial. The principal allegation of error

is that the court en banc mistakenly granted the motion for a new trial on the grounds that the trial court erred in refusing to permit testimony concerning a conversation between a former cab driver for Jenkintown Cab Co., who is now deceased, and his attorney. That admittedly-confidential communication concerned the accident which caused the injuries of which plaintiffs, Mr. and Mrs. Cohen, complain.

On August 4, 1969, Mrs. Cohen was crossing Greenwood Avenue in Wyncote, Pennsylvania when she was struck by a motor vehicle. She sustained serious injuries requiring extensive surgery and hospitalization. At the time of the accident a driver for Jenkintown Cab Co., Edward Guise, was nearby and rendered assistance to Mrs. Cohen before she was transported to the hospital. Guise reported to the police, who subsequently arrived at the scene, that he had seen the accident and that Mrs. Cohen had been struck by a dark-colored, hit-and-run vehicle. Thereafter, at an insurance arbitration hearing, Mr. Guise again stated that he had seen the hit-and-run vehicle. Largely as a result of that testimony, Mr. and Mrs. Cohen recovered $30,000 from their insurance carrier by "stacking" the coverage provided by separate policies.

Shortly after the arbitration hearing and award, Mrs. Cohen's attorney contacted Attorney Charles Gross to inquire about conversations Mr. Gross may have had with Edward Guise concerning the accident. It seems that the finger of suspicion pointed to Guise as having been the driver of the vehicle which actually struck Mrs. Cohen, while Guise was acting within the scope of his employment with Jenkintown Cab Company. His statements concerning the dark hit-and-run vehicle were suspected to be fabrications.

At first, Attorney Gross refused to divulge the substance of his communication with his client, Mr. Guise, concerning the accident, but he subsequently did so at a

deposition after both parties agreed to reserve all objections to the admissibility of his testimony until trial. Mr. Gross' statements indicated that Mr. Guise consulted with him prior to testifying at the arbitration hearing and admitted to having been the driver of the car which struck Mrs. Cohen. Guise sought advice as to whether he should maintain his false story at the hearing, tell the truth, or refuse to testify. Although Mr. Gross advised Guise to either tell the truth or stand on his Fifth Amendment right not to incriminate himself, Guise elected to perjure himself.

Ultimately, the Cohens filed a complaint against the cab company only. At trial the lower court at first ruled that Jenkintown Cab Company had no standing to object to the admission of the confidential communication between Guise and Attorney Gross; but, when the cab company produced Guise's widow who similarly objected, the court barred the testimony, and the jury returned a verdict for the defendant, Jenkintown Cab Company. The court en banc then reversed and remanded the case for a new trial. The reasons therefor are set forth in an excellent opinion written by Judge VOGEL. The question on appeal is whether the jury was entitled to learn that which we all now know—that Edward Guise admitted to being the driver of the car which struck Mrs. Cohen. We are persuaded that the court en banc was correct, and we will affirm.

It has been said that:

"If one were legislating for a new commonwealth, without history or customs, it might be hard to maintain that a privilege for lawyer-client communications would facilitate more than it would obstruct the administration of justice. But we are not writing on a blank slate." McCormick on Evidence §87 at p. 176 (2d ed. 1972).

Indeed, the privileged nature of communications between an attorney and his client is the oldest testimonial privi-

lege known to law. 8 Wigmore on Evidence §2290 (3d ed. 1940). Originally, the reason for the privilege, which extended to all men of honor who received information under a pledge of secrecy, was that disclosure of the information would constitute a breach of oath and honor. By the end of the eighteenth century, however, the courts had determined that an oath of secrecy and a badge of honor could not stand in the way of the judicial "search for truth . . . nor was there any moral delinquency or public odium in breaking one's pledge under force of law." *Id.*

Despite the fall of the general privilege for conversations under oaths of secrecy, the attorney-client privilege survived because a new justification for its existence was found:

"The object and meaning of the rule is this: that as, by reason of the complexity and difficulty of our law, litigation can only be properly conducted by professional men, it is absolutely necessary that a man, in order to prosecute his rights or to defend himself from an improper claim, should have recourse to the assistance of professional lawyers, and it being so absolutely necessary, it is equally necessary, to use a vulgar phrase, that he should be able to make a clean breast of it to the gentleman whom he consults with a view to the prosecution of his claim, or the substantiating his defense against the claim of others; that he should be able to place unrestricted and unbounded confidence in the professional agent, and that the communications he so makes to him should be kept secret, unless with his consent (for it is his privilege, and not the privilege of the confidential agent), that he should be enabled properly to conduct his litigation. That is the meaning of the rule." *Anderson v. Bank,* L.R. 2 Ch. D. 644, 649 (1876).

Today, the privilege is firmly entrenched in the law; and, the lawyer's Code of Professional Responsibility,

Canon 4, requires that a lawyer preserve the confidences and secrets of a client.[1] The problem we must resolve is whether this rule is dogma; that is to say, whether the privilege is efficacious under all circumstances so that a court may not determine that the interests of justice are so compelling, and the interests of the client in preserving the confidence so insignificant, that the cloak of secrecy may be removed and the confidence disclosed. In Pennsylvania, the law leaves room for just such a judicial inquiry.

In *Hamilton v. Neel,* 7 Watts 517, 521-522 (1838), our Supreme Court held such an exception to the privilege does exist:

"It is for the protection and security of clients that their attorneys at law or counsel are restrained from giving evidence of what they have had communicated and intrusted to them in that character; so that legal advice may be had at any time by every man who wishes it in regard to his case, whether it be bad or good, favorable or unfavorable to him, without the risk of being rendered liable to loss in any way, or to punishment, by means of what he may have disclosed

---

1. "Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance." Code of Professional Responsibility, E. C. 4-1, 42 Pa. C.S. at p. 525, 554 (1975).

or intrusted to his counsel. *But where it is impossible that the rights or the interests of the client can be affected by the witness's giving evidence of what came to his knowledge by his having been counsel and acted at the time as attorney or counsel at law, the rule has no application whatever, because the reason of it does not exist.*" [Emphasis added.]

Thus, in Pennsylvania the privilege does not bar testimony of an attorney which reveals the substance of a confidential communication where, in context, the client's rights or interests cannot be adversely affected thereby.[2] 2 G. Henry, Pennsylvania Evidence §693 at p. 132 (1953). In the instant case we have determined that, on balance, the court en banc was correct when it found that the interests of justice required the disclosure of Mr. Guise's communications to his attorney, insofar as those communications were relevant to establish Guise's involvement in the accident of August 4, 1969.

First, Mr. Guise is deceased. Of course, this fact standing alone would be an insufficient basis for compelling disclosure of a privileged communication. "The accepted theory is that the protection afforded by the privilege will in general survive the death of the client." McCormick on Evidence §94 (2d ed. 1972). Thus, certainly in litigation involving the estate of the client, the

---

2. The Act of May 23, 1887, P.L. 158, §5, cl. (d), 28 P.S. §321 (1958) provides:

"Nor shall counsel be competent or permitted to testify to confidential communications made to him by his client or the client be compelled to disclose the same, unless in either case this privilege be waived upon the trial by the client." *Hamilton v. Neel*, supra, has been interpreted as surviving this statute, however. 2 G. Henry, Pennsylvania Evidence §693 at p. 132 (1953). See also *Southeastern Pa. Trans. Auth. v. Transit Cas. Co.*, 55 F.R.D. 553 (E.D. Pa. 1972); *LaRocca v. State Farm Mut. Automobile Ins. Co.*, 47 F.R.D. 278 (W.D. Pa. 1969). Hence, the act has been treated as a restatement of the principle of attorney-client privilege as it existed at common law.

privilege may be raised or waived by the client's representative, so long as the waiver would not reveal scandalous and impertinent matter. 8 Wigmore on Evidence §§2314, 2329 (McNaughton ed. 1961). Nevertheless, the death of Mr. Guise substantially reduces the possibility that his "rights or interests," or the conduct of his daily affairs, could be significantly affected by the disclosure of the privileged communication.[3]

Second, this is a cause of action involving other parties; although, once again, this factor standing alone would not be sufficient to permit disclosure of confidential communications. See 3 Jones on Evidence §21:12 (5th ed. 1958). However, coupled with the fact that Mr. Guise died without leaving an estate which could be joined as a third party defendant, this is certainly a weighty consideration.[4] See, e.g., *LaRocca v. State Farm Mut. Automobile Ins. Co.*, supra at note 2. There is now no possibility that Mr. Guise or his heirs could realize any liability over to the cab company as a result of disclosure of his conversation with Attorney Gross; and, of course, the death of Mr. Guise precludes the possibility of his being prosecuted for perjury or false swearing.

Third, the deceased's conversation with his attorney, Mr. Gross, does not contain scandalous and impertinent matter which would serve to blacken the memory of Mr. Guise. To be sure, combined with his statements at the

---

3. For example, Mr. Guise had been responsible for two previous accidents while employed by the cab company and had been warned that another accident would require his suspension as a driver for the company. This, presumably, was a substantial factor impelling him to submit an apparently false report to the police initially, and were Mr. Guise still alive and employed by Jenkintown Cab Co., his prior poor driving record would establish a sufficient basis for refusing to disclose the purport of his conversation with his attorney.

4. Plaintiffs have not made, and have stated that they will not make any attempt to join the "estate" of Edward Guise as a co-defendant.

hearing, his conversation with his attorney indicates that he committed perjury. However, as aforementioned, he cannot now be criminally prosecuted or civilly held accountable for that apparent breach of oath. Furthermore, the deposition of Mr. Gross has revealed those statements to the public. Their revelation to the jury could not exacerbate any injury which has thus far occurred, but could only serve to help reach a just result in the instant litigation. In any event, evidence such as we have here, so obviously relevant to the plaintiff's claim, may not be considered so scandalous and impertinent as to bar its admission at trial. *Burden v. Burden*, 124 F. 250, 255 (N.D.N.Y. 1903). Of course, under other circumstances, if the confidential cummunication included such matter, and the court could not regulate the testimony to exclude it, then the court might properly refuse to order disclosure of the privileged communication. See 8 Wigmore §2323 (3d ed. 1940).

Finally, the need for the testimony of Attorney Gross was clearly established. Mrs. Cohen has very little recollection, if indeed she had any original perception, of events which tended to establish that she was struck by the cab which Mr. Guise was driving. Futhermore, there were no other eyewitnesses to the accident so that Mr. Guise's culpability would have had to have been gleaned from a modest amount of circumstantial evidence and the largely fragmentary recollections of Mrs. Cohen. Thus, when we balance the necessity for revealing the substance of the conversation between Mr. Gross and Mr. Guise in the instant case, against the unlikelihood of any cognizable injury to the rights, interests, estate or memory of Mr. Guise, we conclude that the privilege must fail and the testimony be admitted. The privilege exists only to aid in the administration of justice, and when it is shown that the interests of the administration of justice can only be frustrated by the exercise of the privilege, the trial judge may require that the communication be disclosed.

McCormick on Evidence §87 at p. 177 (2d ed. 1972). See also McCormick, The Scope of Privilege in the Law of Evidence, 16 Tex. L. Rev. 447, 469 (1938). In making this determination, however, the trial court should resolve all doubt in favor of non-disclosure, so that a client should not be chagrined to learn that the confidences that he conveyed to his attorney have been revealed to his detriment and without his consent.[5]

Order of the lower court is affirmed.

SPAETH, J., concurs in the result.

---

5. Appellees, Claire and Lipman Cohen, filed a cross appeal in which they argued that Jenkintown Cab Company was collaterally estopped from showing that Mrs. Cohen was guilty of contributory negligence. They base this contention on the fact that contributory negligence was not shown at the insurance arbitration hearing. The argument is novel because Jenkintown Cab Company was not a party to the arbitration proceedings. In any event, the appeal is interlocutory since a jury may find for plaintiffs at the subsequent trial, rendering the issue of contributory negligence moot.