In re SUBPOENA NO. 22.

Appeal of A.B., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 11, 1997.
Filed March 2, 1998.

Melvin R. Shuster, Philadelphia, for appellant.

William R. Toal, III, Asst. Dist. Atty., Havertown, for the Com., participating party.

Before KELLY, JOHNSON and HOFFMAN, JJ.

KELLY, Judge:

In this appeal we are asked to decide whether the Delaware County Court of Common Pleas properly denied appellant's, A.B.'s, motion to quash Subpoena No. 22. Specifically, we must determine whether the privilege accorded psychotherapist-client communications bars the disclosure of previous communications between a client and his psychotherapist to a special grand jury investigating the client's murder. We hold that, under the unique circumstances of this case, the psychotherapist-client privilege becomes a qualified privilege after the murder of the

client and that privileged communications relevant to the murder investigation, if any, may be disclosed in related grand jury investigative proceedings. Accordingly, we affirm the trial court's denial of A.B.'s motion to quash the subpoena.

The relevant facts and procedural history underlying this appeal are as follows. A.B. is a social worker who provided psychological services to R.M., under the supervision of a licensed psychologist, from February 15, 1995, through November 27, 1995. On December 28, 1995, R.M. was the victim of a homicide. A special Investigating Grand Jury issued Subpoena No. 22 to A.B. in connection with the investigation of R.M.'s murder. A.B. filed a motion to quash the subpoena on the ground that any information regarding R.M. was obtained during therapy sessions and, therefore, was confidential and absolutely privileged.

The Honorable Kenneth A. Clouse, Supervising Judge of the Investigating Grand Jury, presided over a hearing on September 19, 1996, at which counsel presented argument on the legal and ethical guidelines applicable to psychotherapist-client communications. Following argument, Judge Clouse determined that R.M.'s privacy interests would be adequately protected by the secrecy provisions of the grand jury setting, and A.B.'s assertion of privilege on behalf of R.M. would work to the detriment of R.M.'s interests, would be contrary to the public policy underlying the privilege, and would impede the administration of justice. Accordingly, Judge Clouse denied A.B.'s motion to quash by order entered on September 24, 1996. In addition, Judge Clouse certified the question for appeal, pursuant to 42 Pa.C.S.A. § 702(b) and Pa.R.App.P. 312, and stayed enforcement of the subpoena pending A.B.'s exhaustion of appellate remedies. A.B. subsequently filed a petition for permission to appeal with the Superior Court. By order entered on January 3, 1997, this Court granted permission to appeal.

On appeal, A.B. presents the following questions for our review:

1. WHERE A SOCIAL WORKER PROVIDES THERAPY TO A CLIENT UNDER THE SUPERVISION OF A PSYCHOLOGIST, DOES THE STATUTORY PRIVILEGE ESTABLISHED BY 42 PA.C.S. § 5944 PRECLUDE DISCLOSURE BY THE SOCIAL WORKER OF THE CLIENT'S CONFIDENTIAL COMMUNICATIONS TO A GRAND JURY INVESTIGATING THE MURDER OF THE CLIENT?

2. IS A SOCIAL WORKER SUPERVISED BY A PSYCHOLOGIST ETHICALLY OBLIGATED TO PRESERVE THE CONFIDENTIALITY OF A CLIENT'S COMMUNICATIONS SO THAT THE SOCIAL WORKER MUST BE EXCUSED FROM DISCLOSING SUCH COMMUNICATIONS TO A GRAND JURY INVESTIGATING THE CLIENT'S MURDER?

(A.B.'s Brief at 4).

On review of a challenge to the disposition of a motion to quash a subpoena, this Court has stated:

"[W]hether a subpoena shall be enforced rests in the judicial discretion of the court." *Pennsylvania Crime Commission v. Nacrelli,* 5 Pa.Commw. 551, 577 (1972). *Cf., Robert Hawthorne, Inc. v. County Investigating Grand Jury,* 488 Pa. 373, 412 A.2d 556 (1980)(discretion of grand jury supervising judge regarding enforcement of subpoena). We will not disturb a discretionary ruling of a lower court unless the record demonstrates an abuse of the court's discretion. So long as there is evidence which supports the lower court's decision, it will be affirmed. We may not substitute our judgment of the evidence for that of the lower court.

*In Re Semeraro,* 511 Pa. 584, 587, 515 A.2d 880, 882 (1986). The great deference given to the court's factual findings and factual conclusions based upon the evidence, however, is not accorded to its conclusions of law. "[T]he trial court's conclusions of law are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to the facts by the trial court." *Thatcher's Drug Store v. Consolidated Supermarkets,*

*Inc.,* 535 Pa. 469, 477, 636 A.2d 156, 160 (1994).

*PaineWebber, Inc., v. Devin,* 442 Pa.Super. 40, 51, 658 A.2d 409, 414 (1995).

■ Pennsylvania law does not favor evidentiary privileges. *Commonwealth v. Stewart,* 547 Pa. 277, 282, 690 A.2d 195, 197 (1997).

"[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Hutchison v. Luddy,* 414 Pa.Super. 138, 146, 606 A.2d 905, 908 (1992)(quoting *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979)). Thus, courts should accept testimonial privileges "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *In re Grand Jury Investigation,* 918 F.2d 374, 383 (3dCir.1990)(quoting *Trammel v. United States,* 445 U.S. 40, 46, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980)). *Id. See also Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996) (common-law generally disfavors testimonial privileges).

■ When interpreting the psychotherapist-client statutory privilege, we are guided by the same principles that apply to the attorney-client privilege. *Kalenevitch v. Finger,* 407 Pa.Super. 431, 438, 595 A.2d 1224, 1228 (1991). *See also* 42 Pa.C.S.A. § 5944 (confidential communications between psychologist or psychiatrist and client shall be on same basis as between attorney and client). Once the party asserting a privilege shows that the privilege is properly invoked, the burden shifts to the party seeking disclosure to show that disclosure of the information will not violate the accorded privilege. *In re Investigating Grand Jury,* 527 Pa. 432, 440, 593 A.2d 402, 406 (1991) (citations omitted). *See also Brennan v. Brennan,* 281 Pa.Super. 362, 372, 422 A.2d 510, 515 (1980) (citing *Cohen v. Jenkintown Cab Co.,* 238 Pa.Super. 456, 464, 357 A.2d 689,

693–94 (1976) *appeal denied* (1976))(stating where privilege exists for specific purpose; party seeking disclosure has burden of establishing *prima facie* case that purpose of privilege would be frustrated by exercise of privilege).

In the instant case, we must narrowly construe the psychotherapist-client privilege that A.B. seeks to assert on behalf of the client, R.M., who is now dead. Further, the Commonwealth must show that the disclosure of certain confidential communications may help to solve the client's homicide and will not violate the appropriate privilege.

■ The Pennsylvania statute protecting communications made in confidence to a psychotherapist provides:

### § 5944. Confidential communications to psychiatrists or licensed psychologists

No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52) [63 P.S. § 1201 *et seq.*], to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa.C.S.A. § 5944. Modeled after the attorney-client privilege,[1] codification of the psychotherapist-client privilege is based upon a strong public policy that confidential communications made by a client to the psychotherapist should be protected from disclosure, absent consent or waiver. *Commonwealth v. Fewell,* 439 Pa.Super. 541, 548, 654 A.2d 1109, 1112 (1995).

The privilege afforded by § 5944 was intended to inspire confidence in the client and to encourage full disclosure to the psychologist [and psychiatrist]. By preventing the latter from making public any information which would result in humiliation, embarrassment or disgrace to the client, the privilege is designed to promote

---

1. 42 Pa.C.S.A. § 5916 and § 5928.

effective treatment and to insulate the client's private thoughts from public disclosure.

*Id.* at 548–49, 654 A.2d at 1112–13 (quoting *Commonwealth v. Kyle,* 367 Pa.Super. 484, 500, 533 A.2d 120, 128 (1987), *appeal denied,* 518 Pa. 617, 541 A.2d 744 (1988)).

All fifty state legislatures and the District of Columbia have enacted into law some form of the psychotherapist-client privilege. *Jaffee v. Redmond, supra* at 12 & n. 11, 116 S.Ct. at 1929 & n. 11, 135 L.Ed.2d at 346 & n. 11. The states also recognize a variety of exceptions to the privilege. *Id.* at n. 13. The law in this Commonwealth makes clear that the privilege accorded confidential communications between the client and the psychotherapist must prevail under most circumstances.

For example, our courts have held that a criminal defendant's constitutional rights to confrontation and compulsory process must yield to the statutory psychotherapist-client privilege. Consequently, this Court has repeatedly denied criminal defendants access to the alleged victims' confidential psychotherapeutic records that are not already in the Commonwealth's possession. *See e.g., Commonwealth v. Wilson,* 529 Pa. 268, 602 A.2d 1290 (1992), *cert. denied,* 504 U.S. 977, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992) (interpreting privilege accorded under 42 Pa. C.S.A. § 5945.1 sexual assault counselors' statute, Supreme Court notes absolute privilege provided under section 5944 outweighs criminal defendant's due process rights); *Commonwealth v. Kennedy,* 413 Pa.Super. 95, 115–16, 604 A.2d 1036, 1047 (1992) (*en banc*), *appeal denied,* 531 Pa. 638, 611 A.2d 711 (1992) (public interests supporting statutorily enacted psychotherapist-client privilege outweigh defendant's constitutional interests in disclosure); *Commonwealth v. Johnson,* 444 Pa.Super. 153, 663 A.2d 720 (1995), *appeal granted,* 544 Pa. 603, 674 A.2d 1068 (1996) (statutorily enacted absolute privilege prevails over constitutional right to counsel of choice); *Commonwealth v. Patosky,* 440 Pa.Super. 535, 656 A.2d 499 (1995), *appeal denied,* 542 Pa. 664, 668 A.2d 1128 (1995) (denial of access to statutorily protected psychiatric records does not violate defendant's constitutional rights to compulsory process, due process and effective assistance of counsel); *Commonwealth v. Smith,* 414 Pa.Super. 208, 606 A.2d 939 (1992), *appeal denied,* 533 Pa. 624, 620 A.2d 490 (1993) (no constitutional deprivation of defendant's rights by denial of access to statutorily protected psychotherapeutic records); *Commonwealth v. Eck,* 413 Pa.Super. 538, 605 A.2d 1248 (1992) (defendant has no right to access victim's information protected by absolute statutory privilege absent consent or waiver).

In addition, this Court recently held that a trial court erred in admitting a psychiatrist's testimony as to incriminating statements made by the defendant to the psychiatrist while in his psychiatric care about her role in her child's death because the statements were absolutely protected from disclosure absent consent or waiver. *Commonwealth v. Fewell, supra.* The circumstances at issue in the present case, however, are so unusual and so different from those previously presented to this Court that they compel particular consideration.

Instantly, the client, whom the psychotherapist-client privilege is intended to protect, R.M., has been murdered. In an effort to solve R.M.'s murder, the Commonwealth seeks to question the therapist, A.B., in the context of a grand jury proceeding, about communications R.M. may have made which would help to solve the crime. Here, R.M. is not the accused or the target of the grand jury investigation. Rather, R.M. is the victim of a crime that the Commonwealth seeks to solve. Accordingly, we conclude that the purpose of the privilege is no longer served by prohibiting the Commonwealth from asking R.M.'s therapist about the murder. Our determination is guided in part by two cases addressing the attorney-client privilege.

In *Cohen v. Jenkintown Cab Co., supra,* this Court held that the interests of justice required disclosure of communications between a deceased client and his attorney. This decision was reached after balancing the necessity for revealing the substance of a privileged communication against the unlikelihood of any cognizable injury to the rights, interests, estate or memory of the client. The plaintiff in *Cohen* sustained serious inju-

ries as a result of being struck by a motor vehicle as she was crossing a street. A nearby cabdriver for Jenkintown Cab rendered assistance to the plaintiff and reported to police that he had witnessed the accident. Suspicion subsequently arose concerning the possibility that the cabdriver was actually driving the vehicle that struck the plaintiff while driving within the scope of his employment. Indeed the cabdriver had confided to his attorney that he was the driver of the vehicle that struck the plaintiff. During the pendency of the proceedings against Jenkintown Cab, the cabdriver died. On appeal, this Court determined that the cause of action requiring disclosure of the substance of the communication involved other parties, not, the cabdriver's estate; the communication did not contain scandalous and impertinent matter which would blacken the memory of the cabdriver; and, the evidence was deemed necessary to the plaintiff's case against Jenkintown Cab. Therefore, the *Cohen* court concluded that, on balance, the interests of justice required disclosure of the cabdriver's communications to his attorney.

Similarly, the District of Columbia Circuit Court of Appeals recently determined that the attorney-client privilege becomes qualified after the client's death. The district court held that privileged communications may sometimes be used in criminal proceedings where the relative importance of the communications is substantial because the statements bear on a significant aspect of the crimes at issue and about which there is a scarcity of reliable evidence. *In re Sealed Case*, 124 F.3d 230 (D.C.Cir.1997), *reh'g en banc denied*, 129 F.3d 637 (D.C.Cir.1997). In that case, the Office of Independent Counsel obtained subpoenas for a grand jury investigation of the firing of White House travel office employees. In particular, the Independent Counsel subpoenaed notes of a conversation between a deceased White House official and his private attorney. The attorney

moved in district court to quash the subpoenas, claiming attorney-client privilege and work-product privilege.

Although the district court granted the motion to quash, the Court of Appeals reversed and remanded for further proceedings. In reaching its decision, the Court of Appeals weighed the privilege against the high costs to society and to the administration of justice with respect to protecting confidential communications once the client dies. *Id.* at 233–34. The Court of Appeals concluded that witness "unavailability through death, *coupled with the nonexistence of any client concern for criminal liability after death* creates a discrete realm where the privilege should not automatically apply." *Id.* at 234 (emphasis added). The Court of Appeals also recommended that the district court take steps to limit access to these communications in a way that is consonant with the analysis justifying relaxation of the privilege. *Id.* at 235. For that reason, the Court of Appeals suggested that the district court utilize *in camera* review to determine whether the exception applies. The Court also noted the additional protection afforded by the secrecy provision for grand jury proceedings. *Id.*

In the present case, A.B. argues that Pennsylvania precedent rejects the balancing test employed in *Cohen v. Jenkintown Cab Co., supra.* (A.B.'s Brief at 9, 13). A.B. also relies on the recent United States Supreme Court case, *Jaffee v. Redmond, supra,* in support of her assertion that a balancing of society's interests with those of the privilege holder must be rejected. (A.B.'s Brief at 17–18).

In *Jaffee,*[2] the Supreme Court rejected the application of a balancing test to determine whether a privilege applies to therapeutic communications. The Court reasoned that participants in confidential conversation

**2.** In *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the administrator of the estate of a decedent shot and killed by Police Officer Redmond filed an action for damages based on excessive force in a federal civil suit under 42 U.S.C.A. § 1983. The administrator then sought the discovery of notes from numerous counseling sessions Officer Redmond

participated in after the shooting with a state-licensed social worker. The Supreme Court held that the conversations, and the notes taken of those conversations, between Officer Redmond and the therapist were protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.

"must be able to predict with some degree of certainty whether particular discussions will be protected." *Id.* at 17, 116 S.Ct. at 1932, 135 L.Ed.2d at 349. The Supreme Court held, therefore, that confidential communications between a client and licensed therapist in the course of diagnosis or treatment are privileged and protected from compelled disclosure. The *Jaffee* Court further opined that there may be situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist. *Id.* at n. 19. While recognizing that the psychotherapist-client privilege exists, the Court conceded that the privilege might not prevail under all circumstances.[3]

We read the Supreme Court's decision in *Jaffee v. Redmond, supra,* as well as relevant Pennsylvania precedent, to hold that the psychotherapist-client privilege can be subjected to a balancing test under certain limited circumstances. We do not question the privilege accorded the confidential communications between R.M. and A.B. in the course of R.M.'s diagnosis and treatment. Narrowly construing the privilege, however, we hold that society's interest in solving R.M.'s murder requires disclosure of the communications, if any, relevant to the murder investi-

gation. *See Jaffee v. Redmond, supra; Commonwealth v. Stewart, supra.*

We adopt the reasoning of the United States Court of Appeals in *In re Sealed Case, supra,* and hold that the privilege accorded psychotherapist-client communications is subject to qualification after the client's death where: (1) there is an ongoing criminal investigation; (2) the client is not the alleged offender; (3) the criminal investigation concerns the client's death; (4) the inquiry is in the context of a grand jury proceeding; and, (5) the evidence sought is relevant to the Commonwealth's case against a third party. We conclude that, under those specific circumstances, the interests of the state in procuring information which may help to solve the client's murder outweigh the interests sought to be protected under 42 Pa.C.S.A. § 5944. *See generally, Cohen v. Jenkintown Cab Co., supra; In re Sealed Case, supra.* Accordingly, A.B.'s first question presented on appeal does not merit the requested relief.

In the second question presented on appeal, A.B. proffers that the strictures of the Code of Ethics, 49 Pa.Code § 41.58 and § 41.61, imposed upon psychologists to preserve patient confidentiality precludes testimony before the investigative grand jury. According to A.B., this absolute ethical obligation cannot be waived under the Code of Ethics,[4] except after full disclosure to the

---

**3.** Pennsylvania law also suggests that the psychotherapist-client privilege must give way and that therapists have a duty to warn third parties when a client has made a threat to harm a specific person. *See Leonard v. Latrobe Area Hospital,* 425 Pa.Super. 540, 625 A.2d 1228 (1993); *Dunkle v. Food Service East, Inc.,* 400 Pa.Super. 58, 582 A.2d 1342 (1990). This duty is in general accord with the limits on psychotherapist-client confidentiality recognized by the American Medical Association:

> The obligation to safeguard patient confidences is subject to certain exceptions which are ethically and legally justified because of overriding social considerations. Where a patient threatens to inflict serious bodily harm to another person and there is a reasonable probability that the patient may carry out the threat, the physician should take reasonable precautions for the protection of the intended victim, including notification of law enforcement authorities.

*Ms. B. v. Montgomery County Emergency Service, Inc.,* 799 F.Supp. 534, 539 (E.D.Pa.1992), *affirmed,* 989 F.2d 488 (3rd Cir.1993), *cert. denied,* 510 U.S. 860, 114 S.Ct. 174, 126 L.Ed.2d 133

(1993)(quoting American Medical Association Principles of Medical Ethics ¶ 5.95, reprinted in Council on Ethical and Judicial Affairs of the American Medical Association, Current Opinions, at 21 (1989)). The client's right of confidentiality in those instances must be weighed against the public interest in safety from violent assault. *Leonard v. Latrobe Area Hospital, supra.* Under Pennsylvania law, therefore, situations already exist in which the privilege must give way, for example, if a serious threat of harm to the client or to others can be averted only by means of a disclosure by the therapist.

**4.** The Code of Ethics provides in pertinent part:

> **Principle 5. Confidentiality.**
>
> (a) Psychologists shall safeguard the confidentiality of information about an individual that has been obtained in the course of teaching, practice or investigation. Psychologists may not, without the written consent of their clients *or the client's authorized legal representative* ..., be examined in a civil or criminal action as to information acquired in the course of their professional service on behalf of the

client and written authorization by the client. (A.B.'s brief at 18). Relying upon the Commonwealth Court's decision in *Rost v. State Board of Psychology,* 659 A.2d 626 (Pa. Cmwlth.1995), *appeal denied,* 543 Pa. 699, 670 A.2d 145 (1995), A.B. argues that a psychologist is not excused from following the ethical guidelines of the profession which plainly forbid the disclosure of a client's records without the client's consent. Our reading of the case, however, reveals that A.B.'s reliance on *Rost* is misplaced.

In *Rost,* the State Board of Psychology reprimanded clinical psychologist Rost for breaching the duty of confidentiality by releasing client records pursuant to a subpoena without first seeking the client's consent, professional legal advice or the imprimatur of a judge, even though the court ultimately determined that the client had waived the psychotherapist-client privilege. Because Rost unilaterally released her client's records without consulting either her client or her attorney, the Commonwealth Court held that Rost had breached her duty of confidentiality and violated Sections 8(a)(9) and (11) of the Professional Psychologists Practice Act.

 In the instant case, A.B. is foreclosed from obtaining her client's written consent because the client is dead. A.B. did, however, consult an attorney and challenged the propriety of the subpoena before Judge Clouse. We recognize A.B.'s efforts to fulfill the professional duty of confidentiality and comply with its applicable rules and regulations. Our review of *Rost* and the relevant ethical principles leads us to conclude that A.B. has complied with the mandates of the profession's Code of Ethics. Having complied with the mandates of the profession's Code of Ethics to the fullest extent possible, A.B. cannot be held, under *Rost,* as derelict in the duties of the profession prohibiting disclosure. Therefore, the *Rost* case does not excuse A.B. from appearing, pursuant to Subpoena No. 22, before the grand jury investigating the murder of R.M.

client. Information may be revealed with the consent of the clients affected only after full disclosure to them and after their authorization.

Finally, we pause briefly to address counsel's slippery slope argument that our holding in this case is tantamount to letting the proverbial genie out of the bottle. We disagree. Rather, we limit this holding to the specific circumstances of this case where the client is deceased and criminal proceedings are conducted in the context of a grand jury investigation to solve the client's murder.

Based upon the foregoing reasoning, we hold that the trial court properly denied A.B.'s motion to quash Subpoena No. 22. Accordingly, we affirm the trial court's order entered September 24, 1996, remand the case for further proceedings consistent with this opinion, and relinquish jurisdiction.

Order affirmed; case remanded; jurisdiction relinquished.

49 Pa.Code § 41.61 (emphasis added). Thus, it appears that a client's authorized legal representative may also waive the privilege.