# Topper v. Shatzler

C.P. of Franklin County, no. A.D. 1998-282.

*Karl J. Januzzi,* for plaintiff.
*Donald B. Hoyt,* for defendant.

HERMAN, *J.,* September 5, 2001—

## INTRODUCTION

Before the court is a motion to compel plaintiff to release his mental health records to defendant. Plaintiff answered the motion and the matter was listed for argument. At counsel's request the court directed the matter

to be presented on briefs alone. The briefs were received and the motion is ready for decision.

## BACKGROUND

On July 15, 1996 defendant's vehicle collided with a vehicle in which plaintiff was a passenger. Plaintiff, at that time, was a prisoner being transported by Franklin County near the county prison and his left hand was cuffed to another prisoner's wrist. According to the complaint, the force of the collision caused plaintiff's left arm to be wrenched backwards, causing various injuries. Those injuries are allegedly a "tear of the left supraspinatus tendon; significant tendinitis of the supraspinatus tendon; impingement of the left shoulder rotator cuff; severe strain on nerves and nervous system; pain and suffering; past and future loss of earnings; past and future medical costs; loss of earning capacity; and a permanent diminution of his ability to enjoy life and life's pleasures."

Plaintiff testified in his deposition he was treated at Cumberland Valley Mental Health Center both before and after the accident. Defendant argues she is entitled to gain access to plaintiff's records from the center because he has placed his mental health at issue by claiming damages for "severe strain on nerves and nervous system; pain and suffering; and a permanent diminution of his ability to enjoy life and life's pleasures." Defendant asserts she is entitled to his mental health records because evidence of his mental health treatment before the accident raises the question of whether his psychological injuries stemmed from the accident or from pre-

existing circumstances. Plaintiff denies he has placed his mental health at issue by claiming those damages.

## DISCUSSION

The psychiatrist/psychologist-patient privilege provides:

*"Confidential communications to psychiatrists or licensed psychologists.* No psychiatrist or person who has been licensed . . . to practice psychology shall be, without written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client."

This privilege is modeled after the attorney-client privilege and is designed to protect the privacy of a patient who seeks treatment for psychiatric or psychological disturbances. This absolute privilege belongs to the patient and disclosure cannot occur absent consent or waiver. *In re Subpoena No. 22,* 709 A.2d 385 (Pa. Super. 1998); *Commonwealth v. Johnson,* 444 Pa. Super. 153, 663 A.2d 720 (1995), *reversed on other grounds,* 550 Pa. 298, 705 A.2d 830 (1998). The privilege serves the important public policy of encouraging individuals to seek treatment by protecting what they reveal in confidence from public exposure:

"Patient confidence is essential for effective treatment. Because the information revealed by the patient is extremely personal, the threat of disclosure to outsiders may

cause the patient to hesitate or even refrain from seeking treatment. The privilege thus serves the public interest in promoting a society in which the general well-being of the citizenry is protected. . . .

"The privilege afforded by section 5944 was intended to inspire confidence in the client and encourage full disclosure to the psychologist. By preventing the latter from making public any information which would result in humiliation, embarrassment or disgrace to the client, the privilege is designed to promote effective treatment and to insulate the client's private thoughts from public disclosure." *Kalenevitch v. Finger,* 407 Pa. Super. 431, 436-37, 595 A.2d 1224, 1227 (1991), citing *Commonwealth v. Kyle,* 367 Pa. Super. 484, 533 A.2d 120 (1987).

In addition, the Mental Health Procedures Act, 50 P.S. §7111 provides:

"(a) All documents concerning persons in treatment shall be kept confidential and, without the person's written consent, may not be released or their contents disclosed to anyone except:

"(1) those engaged in providing treatment for the person;

"(2) the county administrator, pursuant to [50 P.S. §7110];

"(3) a court in the course of legal proceedings authorized by this Act; and

"(4) pursuant to federal rules, statutes and regulations governing disclosure of patient information where treatment is undertaken in a federal agency.

"In no event, however, shall privileged communications, whether written or oral, be disclosed to anyone without such written consent . . . ."

As with section 5944 of the Judicial Code, this confidentiality provision can be waived only by the patient. *Johnsonbaugh v. Department of Public Welfare,* 665 A.2d 20 (Pa. Commw. 1995), *affirmed,* 549 Pa. 572, 701 A.2d 1357 (1997).

The question of whether a plaintiff has placed his mental health at issue such that he waives the statutory right to psychologist-patient confidentiality has not yet been directly addressed by our Supreme Court. What remains is an absolute privilege which explicitly protects confidential mental health information but little appellate guidance as to what constitutes placing one's mental health "at issue." Unless it is clear that a plaintiff has placed his mental health at issue, the court need not even reach the question of whether a waiver has occurred.

It is well-established that mental anguish or emotional distress resulting directly from a tortious bodily injury may be compensated in damages. *Long v. Yingling,* 700 A.2d 508 (Pa. Super. 1997). That anguish or distress is to be treated as an element of pain and suffering. *Fish v. Gosnell,* 316 Pa. Super. 565, 463 A.2d 1042 (1983). The concept of pain and suffering subsumes injuries such as damage to nerves and loss of life's pleasures. *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988); *Thompson v. Iannuzzi,* 403 Pa. 329, 169 A.2d 777 (1961). These are long-accepted aspects of a personal injury lawsuit.

In *Kraus v. Taylor,* 710 A.2d 1142 (Pa. Super. 1998), the plaintiff brought suit for permanent physical damages allegedly caused when he, as a pedestrian, was struck by the defendant's vehicle. The trial court permitted the

defendant to introduce confidential mental health treatment records showing the plaintiff was a chronic drug and alcohol abuser. The court held the plaintiff placed this information at issue and impliedly waived the privilege. The Superior Court affirmed the trial court's reasoning that substance abuse decreases life expectancy and was an appropriate factor for the jury to consider in calculating damages.[1]

In reaching its conclusion, the *Kraus* court cited *Rost v. State Board of Psychology,* 659 A.2d 626 (Pa. Commw. 1995) where the issue squarely before the court was whether a psychologist violated certain professional ethical standards by hastily releasing a patient's treatment records pursuant to a subpoena. *Kraus* also cited federal cases which hold that by filing a lawsuit claiming personal injury, a plaintiff places his confidential information at issue and may therefore have impliedly waived the privilege. *Mulholland v. Dietz,* 896 F. Supp. 179 (E.D. Pa. 1994); *O'Boyle v. Jensen,* 150 F.R.D. 519 (M.D. Pa. 1993); *Premack v. J.C.J. Ogar Inc.,* 148 F.R.D. 140 (E.D. Pa. 1993). As with *Kraus,* these federal cases involve a plaintiff's records of chronic substance abuse which may have played a role in his death or injury and therefore was relevant to causation, life expectancy and damages.

---

1. The *Kraus* approach was followed in *Dembinski v. Thomas,* 48 D.&C.4th 353 (2000) (evidence of decedent's prior heroin use was admissible in a wrongful death and survival action because it was a relevant factor in determining life expectancy and future lost earnings) and *Bolden v. SEPTA,* 44 D.&C.4th 397 (2000) (evidence of plaintiff's drug and alcohol history was relevant to establishing life expectancy where plaintiff alleged a permanent shoulder injury).

Our own court has recently followed *Kraus* in denying a plaintiff's motion for a protective order. In *Aldrich v. Chambersburg Hospital,* A.D. 1996-450/*Leininger v. Chambersburg Hospital,* A.D. 1997-216, Franklin County Court of Common Pleas, October 20, 1999, Judge Richard J. Walsh ruled plaintiffs placed their mental health at issue by seeking damages for mental and emotional anguish arising from medical negligence. Judge Walsh concluded that *Kraus* compelled him to deem the psychiatrist/psychologist-patient privilege waived. Although noting that *Kraus* involved permanent physical injuries and not emotional, psychological and/or mental distress or anguish, Judge Walsh felt constrained to apply the *Kraus* court's reasoning "because the Superior Court opinion speaks directly to the implied waiver issue and not just the injuries and claims involved." (Court's opinion, p. 6.)

Judge Walsh was obviously troubled by what he perceived as a broad holding in *Kraus.* We do not feel similarly constrained because our reading of *Kraus* indicates it does not speak to the core issue before us: whether a plaintiff who asserts a physical injury claim with attendant damage to nerves and the nervous system, pain and suffering, and loss of life's pleasures has placed his mental health at issue.

Clearly, a plaintiff places his mental health directly at issue where the alleged injuries are of a purely psychological or mental nature. *Rosse v. Rosse,* 49 D.&C.4th 438 (2000) (husband entitled to examine wife's psychiatric records where wife claimed a need for alimony due to a mental condition). In *Loftus v. Consolidated Rail*

*Corp.,* 12 D.&C.4th 357 (1991) the plaintiff alleged emotional stress and mental anguish arising from the defendant's false accusation of theft. The plaintiff treated with a licensed psychologist after the incident and the defendant sought those psychological treatment records. The court held that a plaintiff pursuing a claim for psychological damages waives the mental records privilege to the extent that he has placed his mental condition directly at issue. See also, *Nardella v. Most Reverent Datillo,* 116 Dauphin Rep. 326 (1996) (plaintiff alleged her relationship with the defendant caused her multiple personality disorder, post-traumatic stress disorder and depression). Such claims, however, are not the same type alleged by the instant plaintiff.

We conclude that the specific averments in the plaintiff's complaint—severe strain on nerves and nervous system, pain and suffering, and permanent diminution of an ability to enjoy life and life's pleasures—are simply the traditional claims for tort damages which are a natural consequence of and attendant to what is in essence a physical injury. In the absence of clear precedent to the contrary, we cannot find that such claims are a sufficient basis for departing from these traditional tort categories or for subverting the psychiatrist/psychologist-patient privilege set out in section 5944 of the Judicial Code and section 7111 of the Mental Health Procedures Act. Under these circumstances the plaintiff has not placed his mental health at issue and therefore we need not reach the question of whether he has waived the privilege. The defendant's motion to compel will be denied.

## ORDER

Now September 5, 2001, defendant's motion to compel the release of plaintiff's mental health records is hereby denied.